O. Shane Balloun (WSBA #45053)
Balloun Law Professional Corporation
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778 | (206) 501-3073
(360) 318-7798 (fax)
o.shane@ballounlaw.com

**Attorney for Plaintiff**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **J. Leslie Elliott,**<br><br>PLAINTIFF;<br><br>v.<br><br>**Antioch University**, now known as **Coalition for the Common Good**, an Ohio nonprofit corporation,<br><br>DEFENDANT. | No. 2:24-cv-00502<br><br>**Complaint for Intentional Discrimination in Violation of Title VI of the Civil Rights Act of 1964, Breach of Contract, and Defamation**<br><br>**JURY DEMAND** |

Plaintiff J. Leslie Elliott alleges:

## PARTIES

**1. Plaintiff.** Plaintiff Jennifer Leslie Elliott is an individual citizen of Washington State, domiciled in Snohomish County.

**2. Defendant.** Defendant Antioch University, which at all times pertinent to the events set forth in this complaint, was known as such, before changing its corporate name to Coalition for the Common Good on or about June 30, 2023, is an Ohio nonprofit corporation with six educational campuses around the country. Defendant has also filed various fictitious business name statements in the jurisdictions where it conducts its business and

Complaint
(No. 2:24-cv-00502)

1

Balloun Law Professional Corporation
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778

activities to use the name "Antioch University" for continuity of the identity that it has held since 1852.

## JURISDICTION AND VENUE

**3. Subject Matter Jurisdiction.** This civil action is within the original jurisdiction of this Court via federal question, pursuant to 28 U.S.C. § 1331, because its primary claim arises under Title VI of the Civil Rights Act of 1964.

**4. Supplemental Jurisdiction.** This Court also has supplemental jurisdiction over the other claims for breach of contract and defamation pursuant to 28 U.S.C. § 1367(a).

**5. Personal Jurisdiction over Defendant.** This Court has personal jurisdiction over Antioch University because Defendant maintains a campus and conducts business in Seattle.

**6. Venue.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (2), (c)(2).

## FACTS

**7.** Ms. J. Leslie Elliott is or was a matriculated student in Antioch University's Graduate School of Counseling, Psychology, and Therapy (the "Program"), yet whose status is now in question because of unjustified actions by the Defendant.

**8.** After Ms. Elliott matriculated and made substantial progress in her course of study in the Program, Antioch University made a series of unilateral official policy changes demanding that its students adhere to so-called "diversity, equity, and inclusion" ("DEI") philosophical and/or political beliefs.

**9.** Likewise, some of Antioch's instructors began to require student signatures to a creed known as a "civility pledge" based on these DEI philosophical constructs in order to complete their courses.

**10.** Upon review, Ms. Elliott decided that she did not agree in substance with the DEI policies or the civility pledge, because she believes they are both dangerous to a tolerant society and tantamount to a theology or religion because they have no epistemological

Complaint  
(No. 2:24-cv-00502)

2

Balloun Law Professional Corporation  
355 Harris Avenue, Suite 201  
Bellingham, Washington 98225  
(360) 318-7778

basis and no basis in empirical fact.

**11.** Ms. Elliott made a serious of public videos and online posts expressing her criticisms of the policy changes at Antioch for a variety of reasons, including but not limited to:

    a. The DEI policies are an implementation of the racialist construct of Critical Race Theory ("CRT"), a subset of Critical Theory, actively promoting racist anti-white bigotry and hatred under the guise of so-called "anti-racism."

    b. Critical theory itself is a family of theories espoused by the so-called Frankfurt School of philosophers and social theorists in the Western European Marxist tradition, beginning in the 1930s at the Institute for Social Research in Frankfurt.

    c. The DEI policies also implement Critical Gender Theory ("CGT") and actively promote sexist policies and hatred;

    d. The readings and textbooks assigned by the professors promulgating the DEI policies and/or the civility pledge do the same.

    e. Antioch University and its professors are requiring students to use particularized language rooted in CRT and CGT as pedagogical shibboleths—in the vein of Orwellian *newspeak*—in order to pass classes.

    f. In other words, not only is Antioch University attempting to indoctrinate its students into a particular way of thinking aligned with Critical Theory and its subsets CRT and CGT, Antioch is compelling its students, by way of the civility pledge and other means, to engage in particular speech.

    g. Antioch University no longer allows expression of any difference of critical opinion on this subject, thereby effectively making its DEI policies and the civility pledge theological constructs with no basis in objective fact.

    h. No part of the DEI policies as applied by Antioch are content-neutral with respect to the free speech rights of the university's students.

Complaint     3     Balloun Law Professional Corporation
(No. 2:24-cv-00502)     355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778

12. At some point after these DEI policy changes began to be implemented, Ms. Elliott refused to sign the civility pledge and was thereby excluded from courses necessary for her to graduate with the degree in counseling for which she originally matriculated into the Program.

13. Ms. Elliott made multiple attempts to rectify and clarify her grievances with the university and to find resolution so that she could complete her studies without being forced to engage in compelled speech against her beliefs to do so.

14. Antioch University rebuffed and ignored all of Ms. Elliott's attempts to resolve this dispute.

15. In fact, in counter-response, on October 27, 2022, the university double-downed on its insistence that DEI control its students' thinking by sending an email to all of its faculty and students—*except Ms. Elliott* (who did not receive a copy of the notice)—issuing the *AUNE and AUS Allied Counseling Department Commitment to Social Justice in Counseling* position statement ("Position Statement").

16. The Position Statement acknowledges Ms. Elliott's online criticism by beginning, "We are aware of material posted online, by one person…" (impliedly referencing Ms. Elliott).

17. The Position Statement goes on to falsely impute "white supremacy" and "transphobia" to Ms. Elliott—without any cited evidence—simply because she disagrees with the university's policies and happens to be a white woman.

18. The Position Statement also falsely labels Ms. Elliott's thoughtful criticisms as "hate speech," notably without pointing to a single example of how her critiques constitute such.

19. The Position Statement also—in a bald-faced set of outright misrepresentations—purports to harmonize with ethics of the American Counseling Association ("ACA"), when in fact the Position Statement and the university's policy changes run counter to the ethics of the ACA.

Complaint
(No. 2:24-cv-00502)

4

Balloun Law Professional Corporation
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778

20. Furthermore, in retaliation to Ms. Elliott's public criticism of the university's DEI policy changes, suspended her access to her online Program account, including her email access.

21. During this time and after, Ms. Elliott was unable to register for further classes or resume her coursework.

22. Meanwhile, the University has not engaged in any due process to formally expel Ms. Elliott—no doubt because the bases for which are the very policy changes for which she has sought grievance against the university, which did not exist when Antioch initially matriculated her.

23. Antioch understands that Ms. Elliott is entitled to the benefit of her original education contract with the university, for which these new DEI policies, the civility pledge, and the Position Statement were not terms binding her matriculation or enrollment in courses and now constitute an unconsented material change to the terms of the underlying educational contract.

24. After some time, the university partially restored Ms. Elliott's online access, but with elements missing: she cannot access her previous course links showing information that was current to her courses at the time she took them; she also cannot access the current and *previous* student handbooks or any other student resources that Antioch University provided and provides via its online service provider Sakai.

25. By terminating Ms. Elliott's access to her online student Program account and disabling her from registering for further coursework for a material period of time, Defendant directly prevented her from continuing her education under the original terms of her contract.

26. The university's original termination of access to Ms. Elliott constituted constructive expulsion of her from the Program without cause and thereby materially breached the educational contract between the parties.

27. The university has continued to demand and require Ms. Elliott adhere to the

Position Statement and/or sign the civility pledge in order to complete her Program, in breach of contract.

**28.** Ms. Elliott's Program, and in fact most of the programs at Antioch University at large, are federally funded through grants and/or student loans or other federal programs.

## CLAIMS

**29.** Each claim set forth below adopts paragraphs 1–28. To the extent of any inconsistency, they are adopted and pled in the alternative.

**Count I: Intentional Discrimination in Violation of Title VI of the Civil Rights Act**

**30. Title VI Protection.** "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**31. Federal financial assistance.** Antioch University's educational programs, and in particular Ms. Elliott's graduate counseling Program, is an activity receiving Federal financial assistance, notably at least by way of the acceptance of federally-secured student loan payments toward Program tuition and costs.

**32. Plaintiff's Race and Color.** Plaintiff is a white American—no better and no worse—no more valuable and no less valuable—than any other person of any other race or color in this country.

**33. Exclusion from Participation.** Antioch University, based on false presumptions about Ms. Elliott because she is white, accused her falsely of "white supremacy" simply because she happened to publicly disagree with the Defendant's new DEI policies, and excluded her from participating in the remainder of her academic Program.

**34. Discrimination.** Antioch has reflexively discriminated against Ms. Elliott because she is a white person expressing a contrary view to its own.

**35. Damages.** Ms. Elliott has suffered by taking out federal student loans for the purpose of completing the Program, all of which she will have to repay, but receiving no

benefit therefor because she has not been able to complete the masters in counseling Program she initially sought out to complete. These damages amount to the full amount of the loans she took out, *i.e.*, $64,828.00 in principal, plus applicable interest. She has also suffered damages in lost profits and opportunity cost by not being able to complete her course of study to elevate her career and income prospects as a licensed professional.

### Count II: Breach of Contract

**36. Existence of Contract.** Antioch University originally made an offer to Ms. Elliott to attend its masters in counseling Program, which incorporated by reference its educational policies then in effect at the time of Ms. Elliott's matriculation, with a view toward graduation with a master's degree upon full completion of the coursework.

**37. Plaintiff's Fulfillment.** At all times, Ms. Elliott has fulfilled her end of the bargain with Antioch, performing with excellence in her coursework and otherwise meeting all requirements reasonably set forth by her professors. But for her refusal to sign the civility pledge and her public criticism and nonendorsement of the unversity's new DEI policies, Ms. Elliott would have graduated from Antioch with a graduate master's degree in counseling.

**38. Defendant's Breach.** By purporting to enforce new terms on Ms. Elliott, namely that she sign a civility pledge which was never required before several years after she matriculated, and by impliedly requiring her to agree with the university's new DEI policies as a condition precedent of graduation, Antioch University has falsely and adhesively purport to add new terms to the underlying educational contract between it and Ms. Elliott, thereby committing material breach of the original contract.

**39. Damages.** Ms. Elliott has suffered the cost of tuition and other related expenses without receiving any benefit of the bargain for their payment; she has also suffered the opportunity cost of not being able to work full time while she attended her Program; and finally, without the conferral of the graduate degree in counseling as anticipated and as she was on track to complete, Ms. Elliott will face a lifelong loss of income for the

remainder of her career because she will not be able to capitalize on the degree as a pre-requisite to professional licensure as a counselor.

### Count III: Defamation (Libel)

40. **Unprivileged communication.** Antioch's release of its Position Statement was an unprivileged statement made essentially to the public, *i.e.*, to all of its faculty and students (except Plaintiff).

41. **Falsity.** The following aspects of the Position Statement describing or imputing intent to Ms. Elliott are false: (a) that she ever "express[ed] white supremacy," or "transphobia;" (b) that anything Ms. Elliott stated in her public criticisms of Antioch University were contrary to the "professional ethical guidelines" regulating "counselors;" and (c) that the DEI policies Antioch promulgated were guided by the American Counseling Association.

42. **Negligence (Duty).** Defendant has an ongoing duty to not make false statements of fact about any person.

43. **Negligence (Breach).** Defendant breached this duty by releasing the Position Statement with false statements about Ms. Elliott.

44. **Negligence (Causation).** These false statements of fact have caused Ms. Elliott harm by exposing her to hatred, contempt, ridicule, and obloquy.

45. **Negligence Per Se.** These false statements have also injured Ms. Elliott in her profession by making it nearly impossible for her to complete her professional course of study to become a licensed counselor.

46. **Damages.** Ms. Elliott is no longer able to complete her course of study—even if Antioch let her do so, because Antioch's false statements have poisoned the community of professors and students and other licensed professionals which she would necessarily interact with in order to complete her studies. Furthermore, her reputation has become the subject of public opprobrium based on Antioch's false allegations about her.

//

Complaint
(No. 2:24-cv-00502)

8

Balloun Law Professional Corporation
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff J. Leslie Elliott prays for relief as follows:

A. That Judgment be entered against Defendant, according to proof, for damages—

    1. For violation of Title VI of the Civil Rights Act of 1964, in an amount no less than $1,164,828.00;

    2. For common law breach of contract, in an amount no less than $1,164,828.00;

    3. For libel (defamation), in an amount no less than $2,000,000.00;

B. Any other and further relief as this honorable Court shall deem just and proper.

Plaintiff respectfully demands TRIAL BY JURY on all issues so triable.

**Respectfully submitted** this April 15, 2024.

By:   /s/ *O. Shane Balloun*

O. Shane Balloun (WSBA #45053)
Balloun Law Professional Corporation
Bellingham Cruise Terminal
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778 | (206) 501-3073
(360) 318-7798 (fax)
o.shane@ballounlaw.com

**Attorney for Plaintiff J. Leslie Elliott**

Complaint
(No. 2:24-cv-00502)

9

Balloun Law Professional Corporation
355 Harris Avenue, Suite 201
Bellingham, Washington 98225
(360) 318-7778